**Opinion issued November 15, 2012.**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-11-00923-CV

_____

**XIIJUN WANG, Appellant**

**V.**

**ROBIN YAO, Appellee**

_____

**On Appeal from the County Court at Law No. 1**
**Harris County, Texas**
**Trial Court Case No. 968714**

_____

## MEMORANDUM OPINION

Xijun Wang appeals the trial court's rendition of a take-nothing judgment in his suit against Robin Yao. Wang sued Yao for breach of contract, alleging he loaned Yao over $90,000 that Yao failed to repay. After a bench trial, the trial

court rendered a take-nothing judgment on Wang's claims. Wang contends the trial court erred by denying his request for an interpreter, by sustaining objections to certain exhibits, and because the evidence is factually insufficient to support the trial court's judgment. We affirm.

## Background

The Hunan River Chinese Restaurant was owned by HDH Enterprise, LLC. Yao was part-owner of HDH and ran the restaurant. Wang testified that he loaned over $90,000 to Yao from 2006 to early 2008 for the costs of running the restaurant. Wang said Yao expressly told him that all the money Wang was advancing would be repaid. Wang introduced several checks that he contends showed the amount he loaned to Yao. Wang also introduced several documents in support of his claim, a loan agreement and promissory note and three separate documents each entitled "Bill of Sale and Assignment of Business Interest." Wang testified that Yao did not provide an interpreter or translator to translate the bills of sale for Wang and also told Wang that the money he was to pay under the agreements was a loan and would be repaid. Wang also introduced a check he received from Yao for $80,000. Wang claimed the check was meant as a repayment on the loan, but was returned for insufficient funds.

Yao testified that Wang did not loan him any money. He pointed out that the "Loan Agreement and Promissory Note" was signed by him as president of

2

Hersky Trading, LLC, not individually. Yao also testified that Wang was not making a loan, but buying an interest in HDH, to become co-owner of the restaurant. The bills of sale list HDH as the seller and Wang as the buyer of "the assets of [Hunan River]." Finally, Yao pointed out that the $80,000 check was not his personal check, but rather a check of HDH, and testified that it was intended to be a re-purchase of Wang's interest in HDH.

After opening statements and just before Wang's testimony, the trial court summarized for the record a discussion that had taken place off the record. The trial court stated that Wang had brought Charmin Lee, an individual proficient in Mandarin Chinese, Wang's native tongue, to court and requested that Lee act as Wang's interpreter. The trial court, however, denied the request because Lee was not a licensed court interpreter. The trial court asked, "Is that a correct recitation [for] the record of everyone's understanding?" Counsel for Wang and counsel for Yao both answered, "Yes, Judge."

The parties tried the case to the bench, which found for Yao and entered a take-nothing judgment. Wang appeals.

### Wang's Request to Have Lee Interpret

In his first issue, Wang contends that the trial court erred in denying his request to use Lee as an interpreter.

3

Section 57.002(a) of the Texas Government Code provides, "A court shall appoint a . . . licensed court interpreter if a motion for the appointment of an interpreter is filed by a party or requested by a witness in a civil or criminal proceeding in the court." TEX. GOV'T CODE ANN. § 57.002(a) (West Supp. 2012). A court also may, on its own initiative, appoint a licensed court interpreter. *Id.* §57.002(b). The statue defines "licensed court interpreter" as "an individual licensed under Subchapter C by the Texas Commission of Licensing and Regulation to interpret court proceedings for an individual who can hear but who does not comprehend English or communicate in English."[1] *Id.* § 57.001(5) (West Supp. 2012).

The statute provides that interpreters who are not licensed may be appointed, but only in narrow circumstances. For example, a court "may appoint a spoken language interpreter who is not a licensed court interpreter" in a county with a population of less than 50,000.[2] *Id.* § 57.002(c). A court may appoint a

---

[1] Section 57.002 also applies to a "certified court interpreter," which is "an individual who is a qualified interpreter as defined in Article 38.31, Code of Criminal Procedure, or Section 21.003, Civil Practice and Remedies Code, or certified under Subchapter B by the Department of Assistive and Rehabilitative Services to interpret court proceedings for a hearing-impaired individual." TEX. GOV'T CODE ANN. § 57.001(1). But this case involves "an individual who can hear," so this opinion will refer only to licensed court interpreters and not certified court interpreters.

[2] The interpreter must also qualify as an expert under the Texas Rules of Evidence, must be at least 18 years of age, and may not be a party to the proceeding. TEX. GOV'T CODE ANN. § 57.002(e).

non-licensed interpreter in a county having a population of 50,000 or more if the language to be interpreted is not Spanish and "the court makes a finding that there is no licensed court interpreter within 75 miles who can interpret in the language that is necessary in a proceeding." *Id.* § 57.002(d). The trial court made no such finding in this case.

Wang argues that, because he did not file a motion asking the court to appoint an interpreter but instead orally requested the use of his own interpreter, the provisions of Chapter 57 do not apply, and Lee, therefore, was not required to be a licensed court interpreter to interpret for Wang.[3] In other words, Wang argues that Chapter 57 applies only when the party filed a written motion for an interpreter, not when a party made an oral request for an interpreter.

Statutory construction is a question of law, which we review de novo. *McIntyre v. Ramirez*, 109 S.W.3d 741, 745 (Tex. 2003). "In construing a statute, 'our primary objective is to determine and give effect to the Legislature's intent.'" *Id.* (quoting *Tex. Dep't of Transp. v. Needham*, 82 S.W.3d 314, 318 (Tex. 2002)). To determine the Legislature's intent, we begin with the plain language of the statute, but may also consider other matters, including the law's objective, the

---

[3] Wang did not ask the trial court to appoint an interpreter other than Lee. Accordingly, Wang waived any claim that a licensed court interpreter should have been appointed.

legislative history, and the consequences of a particular construction.  TEX. GOV'T CODE ANN.  § 311.023(1), (3), (5) (West 2005); *McIntyre*, 109 S.W.3d at 745.

We believe the plain language of the statute demonstrates that the Legislature intended Chapter 57's licensing requirements to apply to all court interpreters unless the exceptions in subsections (c) or (d) apply.  First, a court may appoint a licensed court interpreter on its own motion.  Thus, contrary to Wang's contention, a party's filing of a motion is not necessary to trigger the application of Chapter 57.  TEX. GOV'T CODE ANN. § 57.002(b); *see also* Tex. Att'y Gen. Op. No. JC-0584, 2002 WL31674922, at *14 (2002) (explaining section 57.002 "appears to contemplate written motions," but "nothing precludes a court from granting a party's oral motion or request for appointment of an interpreter, or from appointing an interpreter on its own motion").  Additionally, section 57.002 allows a trial court to appoint an interpreter who is not a licensed court interpreter in certain situations, and these subsections make no express reference to or requirement of a motion, written or otherwise.  *See* TEX. GOV'T CODE ANN.  §57.002(c), (d).  Thus, according to the plain language of the statute, if a court appoints an interpreter, it must appoint a licensed court interpreter, except in those specific situations described in section 57.002.

This interpretation is consistent with an opinion from the Office of the Attorney General, which is persuasive authority.  *See City of Dallas v. Abbott*, 304

S.W.3d 380, 384 (Tex. 2010) (citing *Holmes v. Morales*, 924 S.W.2d 920, 924 (Tex. 1996)). The Attorney General opined that section 57.002(a) leaves to the trial court's discretion whether to appoint an interpreter, but it "clearly modifies the authority of a court to determine the qualifications of an interpreter." Tex. Att'y Gen. Op. No. JC-0584, 2002 WL 31674922, at *6. The Attorney General "construe[d] section 57.002(a) to impose on a court the mandatory duty to appoint a *certified* or *licensed* interpreter when the court appoints an interpreter." *Id.* (emphasis in original). The Attorney General also concluded, "[T]he legislature intended chapter 57's licensing requirements to apply in all civil and criminal proceedings." *Id.* at *11.

The language of the statute indicates that the Legislature intended to establish statewide, uniform standards for licensing court interpreters. The Legislature also provided specific exceptions to the requirement that court interpreters be licensed, none of which apply in this case. Accordingly, we conclude that the trial court did not err in denying Wang's request to have Lee, an unlicensed court reporter, interpret the proceedings. *See Salem v. Asi*, No. 02-10-00295-CV, 2011 WL 2119640, at *2 (Tex. App.—Fort Worth May 26, 2011, no pet.).

We overrule Wang's first issue.

## Exclusion of Evidence

In his second issue, Wang contends that the trial court erred in refusing to admit two checks into evidence. The first was a check that Yao purportedly wrote to Wang for $70,247.00. The second was a $10,000 check that Wang purportedly gave to Yao, made payable to the restaurant. Yao responds that Wang did not preserve this issue for appellate review.

### A.    Standard of Review

We review a trial court's decision to exclude evidence for an abuse of discretion. *Bay Area Healthcare Grp., Ltd. v. McShane,* 239 S.W.3d 231, 234 (Tex. 2007); *Owens–Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998). A trial court abuses its discretion if it acts without regard to guiding rules or principles. *Owens–Corning Fiberglas Corp.*, 972 S.W.2d at 43. We must uphold the trial court's evidentiary ruling if there is any legitimate basis for the ruling. *Id.* We will not reverse a trial court for an erroneous evidentiary ruling unless the error probably caused the rendition of an improper judgment. *See* TEX. R. APP. P. 44.1(a)(1); *McShane*, 239 S.W.3d at 234; *Benavides v. Cushman, Inc.*, 189 S.W.3d 875, 879 (Tex. App.—Houston [1st Dist.] 2006, no pet.). Evidentiary rulings do not usually cause reversible error unless the judgment turns on the particular evidence that was admitted or excluded. *Benavides*, 189 S.W.3d at 879 (citing *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753–54 (Tex. 1995)).

**B. Check for $70,427**

Wang offered into evidence a check signed by Yao for $70,427, dated February 11, 2008, bearing the notation "remaining of 80,000." Yao objected on the grounds that the check had not been produced during discovery. The trial court sustained the objection.

Rule 193.6(a) provides that "[a] party who fails to make, amend, or supplement a discovery response in a timely manner may not introduce in evidence the material or information that was not timely disclosed." *See* TEX. R. CIV. P. 193.6. Rule 193.6 "mandates exclusion of the undisclosed material or information," unless the trial court finds good cause for the failure to disclose the evidence or lack of unfair surprise or prejudice to the opposing party. *Harris Cnty. v. Inter Nos, Ltd.*, 199 S.W.3d 363, 367 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (citing TEX. R. CIV. P. 193.6(b)). The burden of showing good cause, lack of unfair surprise, or lack of prejudice is on the party who seeks to introduce the evidence. *Id.* (citing TEX. R. CIV. P. 193.6(b)).

Wang's counsel argued that there was good cause for the failure to timely produce the check.[4] He stated that he had received the check the day of trial because Wang "did not believe that this check was relevant to the issues at trial, but that now he understands that it is relevant." Failing to understand the

---

[4] Wang did not assert a lack of unfair prejudice or surprise in the trial court or in his brief. We therefore do not address either of those issues.

importance of the proffered evidence is not good cause for failing to produce it during discovery. *See Sprague v. Sprague*, 363 S.W.3d 788, 800 (Tex. App.—Houston [14th Dist.] 2012, pet. denied) (citing *Alvarado v. Farah Mfg. Co.*, 830 S.W.2d 911, 915 (Tex. 1992)) (holding trial counsel's failure "to appreciate the significance" of two letters is not good cause for admitting letters not produced during discovery); *see also Inter Nos, Ltd.*, 199 S.W.3d at 367 (citing *Alvarado*, 830 S.W.2d at 915) (noting that "the following factors, standing alone, do not constitute good cause: inadvertence of counsel, lack of surprise, or uniqueness of the excluded evidence").  Because Wang did not show good cause for failing to timely produce the check during discovery, we hold that the trial court did not abuse its discretion in excluding the check.

For the first time on appeal, Wang also argues, "As commercial events, checks should not even be subject to the full strictures of the rules of evidence."  In support of this proposition, Wang asserts that federal courts have considered checks as "legally-operative 'verbal acts' that are not barred by certain evidentiary restrictions."  Wang did not offer the check under this theory of admissibility at trial; therefore, the issue is not preserved for our review.  *See* TEX R. APP. P. 33.1(a)(1)(A) (complaint preserved for appellate review by requesting desired ruling from trial court "with sufficient specificity to make the trial court aware of the complaint"); *see also Tidwell v. Terex Corp.*, No. 01-10-01119-CV, 2012 WL

3776027, at *14 (Tex. App.—Houston [1st Dist.] Aug. 30, 2012, no pet.) (mem. op.) (argument that evidence of subsequent remedial measure was admissible to show control not preserved when not raised in trial court as theory supporting admission of evidence); *Aldridge v. Avara*, No. 14–05–01283–CV, 2007 WL 2366964, at *6 (Tex. App.—Houston [14th Dist.] Aug. 21, 2007, no pet.) (mem. op.) (because appellant did not argue evidence admissibility under same hearsay exception at trial as she did on appeal, she failed to preserve error for review); *McKee v. McNeir*, 151 S.W.3d 268, 270 (Tex. App.—Amarillo 2004, no pet.) (finding proponent of evidence waived complaint that trial court erred in excluding evidence because proponent's stated grounds for admission at trial did not comport with grounds raised on appeal).

We overrule Wang's second issue concerning the check for $70,427.

## C.  Check for $10,000

Wang offered into evidence a copy of a check he wrote for $10,000, dated June 16, 2007.  Yao objected on the grounds of "proper authentication and predicate."  Counsel for both Wang and Yao discussed the issue with the trial court.  The trial court asked Wang's counsel, "Are you trying to make a business records exception under 803?"  Wang counsel replied that was his intent.  The trial court asked Wang's counsel if he had filed a business records affidavit to

11

authenticate the copy under Texas Rule of Evidence 902(10), to which counsel replied he had not. The discussion of the admissibility concluded:

> Court: Well, the objection to the exhibit being admitted as hearsay is sustained at this time. I will allow you to try to prove it up either through the maker of the check or through the business records of an entity that would have that in the normal scope of a business record.

> Counsel: All right. We'll go to the next question. It's really unnecessary to have this admitted into evidence.

On appeal, Wang argues that the trial court erred because Texas courts have concluded that checks are not hearsay, and, therefore, he was not required to establish the business records exception to admit the check into evidence. Citing Rules of Evidence 902(9) and 1003, Wang also argues the check is "commercial paper" that is "self-authenticating" and copies of documents are generally admissible to the same extent as originals. As shown above, Wang did not offer the check into evidence at trial under any of these theories. Therefore, these arguments are not preserved for appeal. *See* TEX R. APP. P. 33.1(a)(1)(A); *see also Tidwell*, 2012 WL 3776027 at *14; *Aldridge*, 2007 WL 2366964, at *6; *McKee*, 151 S.W.3d at 270.

We overrule Wang's second issue concerning the check for $10,000.

## Factual Sufficiency

In his third issue, Wang contends that the trial court's judgment is not supported by factually sufficient evidence.

## A.    Standard of Review

Where, as here, findings of fact were neither filed nor requested after a bench trial, we imply all necessary findings of fact to support the trial court's judgment. *Ryan v. Abdel-Salam*, 39 S.W.3d 332, 335 (Tex. App.—Houston [1st Dist.] 2001, pet. denied) (citing *Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 83 (Tex. 1992)). An appellant may still challenge implied findings, which we review under the same standard we apply to jury findings. *Id.* (citing *Holt Atherton Indus., Inc.*, 835 S.W.2d at 83). When reviewing the factual sufficiency of the evidence, we consider all the evidence, both in support of and contrary to the challenged implied finding, and uphold the implied finding unless it is against the great weight and preponderance of the evidence so as to be manifestly unjust. *Id.* In conducting a factual sufficiency review, we may not substitute our judgment for that of the fact-finder. *Pitts & Collard, L.L.P. v. Schechter*, 369 S.W.3d 301, 312 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (citing *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003)). "The fact-finder is the sole judge of the witnesses' credibility and the weight to be given their testimony, and the fact-finder may choose to believe one witness over another." *Id.* (citing *Golden Eagle Archery, Inc.*, 116 S.W.3d at 761). We "must assume that the fact-finder resolved all evidentiary conflicts in accordance with its decision if a reasonable person could have done so." *Id.* An appellate court may not impose its own

opinion to the contrary of the fact-finder's implied credibility determinations. *Id.* (citing *Golden Eagle Archery, Inc.*, 116 S.W.3d at 761).

**B.      Analysis**

Wang sued Yao for breach of contract, based on Yao's alleged failure to repay a loan. Wang contends that the evidence at trial "showed that [Wang] paid out to [Yao] and the two businesses that [Yao] was principally in charge of a total sum of $90,453.00" and that Yao failed to repay that sum. The elements of a breach of contract cause of action are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of contract by the defendant; and (4) damages sustained as a result of the breach. *Williams v. Unifund CCR Partners*, 264 S.W.3d 231, 235–36 (Tex. App.—Houston [1st Dist.] 2008, no pet.) (citing *Winchek v. Am. Exp. Travel Related Servs. Co.*, 232 S.W.3d 197, 202 (Tex. App.—Houston [1st Dist.] 2007, no pet.)). A valid contract consists of: (1) an offer, (2) an acceptance in strict compliance with the terms of the offer, (3) a meeting of the minds, (4) each party's consent to the terms, and (5) execution and delivery of the contract with the intent that it be mutual and binding. *Id.* at 236.

An implied finding that Wang and Yao did not reach a meeting of the minds about the alleged loan supports the trial court's judgment. *See Williams*, 264 S.W.3d at 236. Wang testified that the checks he gave to Yao were for loans.

14

Yao, in contrast, testified that they were not loans, but investments in the company that owned the Hunan River Restaurant. The trial court reasonably could have credited Yao's testimony and resolved this conflicting testimony concerning the checks' purpose in Yao's favor. *See Pitts & Collard, L.L.P.*, 369 S.W.3d at 312 (stating fact-finder is sole judge of credibility of witnesses and may choose to believe one witness over another). Furthermore, this implied finding is not so against the weight of the other evidence on which Wang relies to render the finding manifestly unjust. Wang introduced a loan agreement and promissory note that he contends supports his cause of action. The agreement, however, was between Wang and Hersky Trading, LLC, of which Yao was the president, not with Yao personally. Similarly, one of the checks Wang contends supports his cause of action was written to Hersky Trading, not to Yao. Wang also introduced checks that were written to Yao. The first of these bears the notation "Hunan River Downpay" in the memo line. Others checks to Yao state the checks were for "2nd payment (Hunan River)," "2nd payment," and "3rd payment for HDH." Another check was written to "Hunan River," not Yao, and states it is for "Partner Investment." Additionally, Wang introduced several documents entitled "Bill of Sale and Assignment of Business Interest." These documents expressly state that HDH Enterprise, LLC was selling an interest in the company to Wang. Finally, the check for $80,000, which was returned for insufficient funds and which Wang

15

contends was evidence Yao was repaying a loan, was written on the account of the "Hunan River Chinese Restaurant," not Yao's personal account.

In sum, Yao's testimony and the documentary evidence indicating the transactions were purchases and not loans conflicted with Wang's testimony that he loaned money to Yao with the expectation that he would be repaid. Conflicts in the evidence are the sole province of the fact-finder, in this case, the trial court. *See Pitts & Collard, L.L.P.*, 369 S.W.3d at 312; *Ryan*, 39 S.W.3d at 335. And we must presume that the trial court resolved the conflicts between Wang's testimony and the other evidence in favor of its decision. *See Pitts & Collard, L.L.P.*, 369 S.W.3d at 312 (citing *Golden Eagle Archery, Inc.*, 116 S.W.3d at 761). Accordingly, we hold that the evidence is factually sufficient to support the trial court's implied finding that the partied did not enter into a loan agreement with the expectation that Yao, individually, would repay the loan.[5]

We overrule Wang's third issue.

---

[5] Wang also asserts the judgment is against the great weight and preponderance of the evidence because the trial court "could pierce the corporate veil and hold [Yao] personally accountable." However, neither the pleadings nor the evidence supports the judgment on a veil-piercing theory. *See Mapco, Inc. v. Carter*, 817 S.W.2d 686, 688 (Tex. 1991) (holding judgment against company that owned defendant company not proper where, in part, no pleadings or evidence supported that theory).

16

## Conclusion

We affirm the trial court's judgment.

Rebeca Huddle
Justice

Panel consists of Chief Justice Radack and Justices Bland and Huddle.